1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES T. FREELAND,

11              Plaintiff,              No. CIV S-06-0187 LKK DAD P

12        vs.

13   SACRAMENTO CITY POLICE
     DEPARTMENT, et al.,               ORDER AND
14
                Defendants.            FINDINGS AND RECOMMENDATIONS
15   _____/

16              Plaintiff, formerly confined at the Sacramento County Main Jail, is proceeding pro

17   se with a civil rights action seeking relief under 42 U.S.C. § 1983.  The matter is before the court

18   on a motion for summary judgment brought on behalf of defendants Perez and Renzelman.

19   Plaintiff has filed an opposition to the motion, and defendants have filed a reply.

20                              **BACKGROUND**

21              In his amended complaint plaintiff has named defendants Vu, Villegas, Hansen,

22   Sanchez, Perez, and Renzelman.[1]  In relevant part, he alleges as follows.  On November 23,

23

24        [1]  Defendants Vu, Villegas, Sanchez, and Hansen are Sacramento Police Department
     officers and are represented by the Sacramento City Attorney's Office.  Defendants Perez and
25   Renzelman are parole agents and are represented by the Office of the Attorney General.  Counsel
     on behalf of defendants Perez and Renzelman has also filed a motion for summary judgment,
26   which the court will address in separate findings and recommendations.

2004, plaintiff began serving his parole term in the Sacramento area.  He remained on active parole until his arrest on May 24, 2005.  On that evening, plaintiff was in front of his mother's house when defendants Vu, Villegas, Hansen, Sanchez, Perez, and Renzelman drove up in unmarked law enforcement vehicles.  Defendant Vu asked plaintiff if he had anything on him.  Plaintiff replied "here I'll empty my pockets for you."  According to plaintiff, defendant Vu then grabbed his left wrist and searched him while defendant Hansen grabbed his right arm through a car window.  Defendants Villegas, Perez, and Renzelman then placed plaintiff on the ground in handcuffs face down and retrieved a firearm from him.  They then searched plaintiff again in a progressively violent fashion but found nothing else in his possession.  (Am. Compl. at 16-17.)

Plaintiff alleges that the defendants repeatedly attacked him while he lay handcuffed and face down in the street.  They grabbed his ankles and crossed them and then jumped on him from behind.  Plaintiff acknowledges that he does not know which of the defendants attacked him, but he screamed in pain and asked them to stop because he had suffered serious injuries to his face, back, neck, hip, and ankle.  Plaintiff also repeatedly asked the defendants for medical attention.  However, the defendants laughed at him and continued the attacks while giving each other high fives and telling him they would love to kill him.  The defendants also refused to take him to the hospital or call an ambulance and allowed thirty to forty minutes to pass before they transported plaintiff to the Sacramento County Main Jail.  (Am. Compl. at 17-18.)

Plaintiff claims that the defendants engaged in the excessive use of force against him, failed to protect him, and refused to provide him with adequate medical care in violation of his constitutional rights.  In terms of relief, plaintiff requests injunctive relief and monetary damages.  (Am. Compl. at 30-41.)

/////

/////

/////

2

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

1    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3    (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4    1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5    return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6    1436 (9th Cir. 1987).

7            In the endeavor to establish the existence of a factual dispute, the opposing party

8    need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13   committee's note on 1963 amendments).

14           In resolving the summary judgment motion, the court examines the pleadings,

15   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26   /////

1       On February 22, 2007, the court advised plaintiff of the requirements for opposing

2   a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3   F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

4                    **OTHER APPLICABLE LEGAL STANDARDS**[2]

5   I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

6       The Civil Rights Act under which this action was filed provides as follows:

7       Every person who, under color of [state law] . . . subjects, or causes
        to be subjected, any citizen of the United States . . . to the
8       deprivation of any rights, privileges, or immunities secured by the
        Constitution . . . shall be liable to the party injured in an action at
9       law, suit in equity, or other proper proceeding for redress.

10  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

11  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

12  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

13  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

14  meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

15  omits to perform an act which he is legally required to do that causes the deprivation of which

16  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

17      Moreover, supervisory personnel are generally not liable under § 1983 for the

18  actions of their employees under a theory of respondeat superior and, therefore, when a named

19  defendant holds a supervisorial position, the causal link between him and the claimed

20  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

21  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

22

23          [2]  As the parties recognize, liberally construed, plaintiff's amended complaint states
    cognizable claims against the defendants for the use of excessive force, failure to protect or
    failure to intercede, and inadequate medical care.  In its initial screening order in this case, the
24  court indicated that the Eighth Amendment and the Fourteenth Amendment governed plaintiff's
    claims.  (Order filed Jan. 23, 2007).  For the reasons discussed in the analysis section of these
25  findings and recommendations, the court has determined that, in fact, the Fourth Amendment
    governs plaintiff's excessive force claims as well as his failure to protect or failure to intercede
26  claims, and the Fourteenth Amendment governs plaintiff's inadequate medical care claims.

                                        5

1  allegations concerning the involvement of official personnel in civil rights violations are not

2  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

3  II.  Fourth Amendment and Excessive Force

4          A claim that a law enforcement officer used excessive force during the course of

5  an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard.

6  Graham v. Connor, 490 U.S. 386, 395 (1989).  Under this standard, "'[t]he force which [i]s

7  applied must be balanced against the need for that force: it is the need for force which is at the

8  heart of the Graham factors.'"  Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997)

9  (quoting Alexander  v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994)).

10  In addressing this legal standard, the Ninth Circuit recently reiterated:

11          We ask whether the officers' actions are objectively reasonable in
        light of the facts and circumstances surrounding them.  We must
12          balance the nature of the harm and quality of the intrusion on the
        individual's Fourth Amendment interests against the
13          countervailing governmental interests at stake.  Stated another way,
        we must balance the amount of force applied against the need for
14          that force.

15  Bryan v. McPherson, ___ F.3d ___, 2009 WL 5064477 at *2 (9th Cir. Dec. 28, 2009) (internal

16  quotations and citations omitted).  See also Scott v. Harris, 550 U.S. 372, 383-84 (2007); Santos

17  v. Gates, 287 F.3d 846, 853 (9th Cir. 2002); Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir.

18  2001); Liston, 120 F.3d at 976.

19          In analyzing the nature and quality of the intrusion on an individual's Fourth

20  Amendment interests, the court considers both the type and the amount of force used.  See Bryan,

21  2009 WL 5064477 at *3.  "Force is excessive when it is greater than is reasonable under the

22  circumstances."  Santos, 287 F.3d at 854 (citing Graham, 490 U.S. 386).  Thus,

23          [a]lthough it is undoubtedly true that police officers are often
        forced to make split-second judgments, and that therefore not every
24          push or shove, even if it may seem unnecessary in the peace of a
        judge's chambers is a violation of the Fourth Amendment, it is

25

26  /////

6

1   equally true that even where some force is justified, the amount
    actually used may be excessive.
2

3   Santos, 287 F.3d at 853 (internal quotations and citations omitted).

4           In analyzing the governmental interests at stake, the court considers a range of

5   factors, including "'(1) the severity of the crime at issue, (2) whether the suspect pose[d] an

6   immediate threat to the safety of the officers or others . . . (3) whether he [was] actively resisting

7   arrest or attempting to evade arrest by flight,' and any other 'exigent circumstances [that] existed

8   at the time of the arrest.'"  Deorle, 272 F.3d at 1280 (quoting Headwaters Forest Def. v. County

9   of Humboldt, 240 F.3d 1285 (9th Cir. 2000), vacated and remanded on other grounds, 534 U.S.

10  801 (2001)).  See also Blankenhorn v. City of Orange, 485 F.3d 463, 477 (2007).  These factors

11  are not exclusive, however.  Rather, the court must "examine the totality of the circumstances

12  and consider 'whatever specific factors may be appropriate in a particular case, whether or not

13  listed in Graham.'"  Bryan, 2009 WL 5064477 at *5.  For example, the court may appropriately

14  consider whether a warning was given before force was used.  See Deorle, 272 F.3d at 1285

15  ("Less than deadly force that may lead to serious injury may be used only when a strong

16  governmental interest warrants its use, and in such circumstances should be preceded by a

17  warning, when feasible.").

18  III.  Fourth Amendment and Failure to Protect or Failure to Intercede

19          "Pursuant to a long line of civil cases, police officers have a duty to intercede

20  when their fellow officers violate the constitutional rights of a suspect or other citizen."  United

21  States v. Koon, 34 F.3d 1416, 1447 (9th Cir. 1994), rev'd on other grounds, 518 U.S. 81 (1996);

22  Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).  Parole officers have the same duty

23  to intercede in such situations.  See, e.g., Motley v. Parks, 383 F.3d 1058, 1071 (9th Cir. 2004)

24  (parole officer was not entitled to qualified immunity in connection with parole search because

25  he either participated in harassing and intimidating plaintiff during the search or failed to

26  intercede to stop the harassment and intimidation of the plaintiff by other officers).

1    In such cases, "the constitutional right violated by the passive defendant is

2 analytically the same as the right violated by the person who strikes the blows." Koon, 34 F.3d at

3 1447.  In this regard, a law enforcement officer who fails to intercede when his fellow officers

4 deprive a victim of his Fourth Amendment right to be free from an excessive use of force would,

5 like his fellow officers, be liable for depriving the victim of his Fourth Amendment rights.  Id.

6    However, a law enforcement officer may only be held liable for failing to

7 intercede if he had a "realistic opportunity" to do so.  See Cunningham, 229 F.3d at 1289-90.

8 For example, if officers are not present at the time of a constitutional violation, they have no

9 realistic opportunity to intercede.  Id. at 1290.  In addition, if a constitutional violation occurs too

10 quickly, there may no realistic opportunity to intercede to prevent the violation.  See, e.g.,

11 Knapps v. City of Oakland, 647 F. Supp. 2d 1129, 1159-60 (N.D. Cal. 2009).

12 IV.  Fourteenth Amendment and Adequate Medical Care

13    The Fourteenth Amendment imposes, at a minimum, the same duty to provide

14 adequate medical care to those incarcerated as imposed by the Eighth Amendment: "'persons in

15 custody ha[ve] the established right to not have officials remain deliberately indifferent to their

16 serious medical needs.'"  Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1187 (9th Cir.

17 2002) (quoting Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996)).  "An official's deliberate

18 indifference to a substantial risk of serious harm to an inmate - including the deprivation of a

19 serious medical need - violates the Eighth Amendment, and a fortiori, the Fourteenth

20 Amendment."  Conn v. City of Reno, __ F.3d __, 2010 WL 48649, at *11 (9th Cir. Jan. 8, 2010).

21 In this regard, the court may look to decisions involving claims of inadequate medical care

22 applying Eighth Amendment standards.  See Lolli v. County of Orange, 351 F.3d 410, 418-19

23 (9th Cir. 2003) (employing traditional Eighth Amendment standards to analyze Fourteenth

24 Amendment inadequate medical care claims); Oregon Advocacy Center v. Mink, 322 F.3d 1101,

25 1121 n.11 (9th Cir. 2003) (finding the deliberate indifference standard to be of use in a

26 substantive due process analysis).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.  An Eighth Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  See also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of

1   mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for

2   the prisoner's interests or safety.'"   Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

3               Delays in providing medical care may manifest deliberate indifference.  Estelle,

4   429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from a delay in

5   providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d

6   1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,

7   1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

8   Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]

9   prisoner need not show his harm was substantial; however, such would provide additional

10   support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett

11   v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

12               Finally, mere differences of opinion between a prisoner and prison medical staff

13   as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.

14   Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.

15   Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.

16   1981).

17   V.  Qualified Immunity

18               "Government officials enjoy qualified immunity from civil damages unless their

19   conduct violates 'clearly established statutory or constitutional rights of which a reasonable

20   person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

21   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

22   immunity defense, the central questions for the court are (1) whether the facts alleged, taken in

23   the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

24   statutory or constitutional right and (2) whether the right at issue was "clearly established."

25   Saucier v. Katz, 533 U.S. 194, 201 (2001).

26   /////

1    Although the court was once required to answer these questions in order, the

2 United States Supreme Court has recently held that "while the sequence set forth there is often

3 appropriate, it should no longer be regarded as mandatory."  Pearson v. Callahan, __ U.S. __, __,

4 129 S. Ct. 808, 818 (2009).  In this regard, if a court decides that plaintiff's allegations do not

5 make out a statutory or constitutional violation, "there is no necessity for further inquiries

6 concerning qualified immunity."  Saucier, 533 U.S. at 201.  Likewise, if a court determines that

7 the right at issue was not clearly established at the time of the defendant's alleged misconduct,

8 the court may end further inquiries concerning qualified immunity at that point without

9 determining whether the allegations in fact make out a statutory or constitutional violation.

10 Pearson, 129 S. Ct. at 818-21.

11    In deciding whether the plaintiff's rights were clearly established, "[t]he proper

12 inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was

13 unlawful in the situation he confronted' . . . or whether the state of the law [at the relevant time]

14 gave 'fair warning' to the officials that their conduct was unconstitutional."  Clement v. Gomez,

15 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202).  The inquiry must be

16 undertaken in light of the specific context of the particular case.  Saucier, 533 U.S. at 201.

17 Because qualified immunity is an affirmative defense, the burden of proof initially lies with the

18 official asserting the defense.  Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536

19 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

21 I. Defendants' Statement of Undisputed Facts and Evidence

22    The defendants' statement of undisputed facts is supported by citations to the

23 declarations by defendants Perez and Renzelman signed under penalty of perjury.  It is also

24 supported by citations to plaintiff's deposition transcript and his amended complaint.

25    The evidence submitted by the defendants establishes the following.  From

26 November 2004, until his arrest on May 24, 2005, plaintiff was a parolee subject to the

supervision of the California Department of Corrections and Rehabilitation ("CDCR").  As a parolee, plaintiff was also subject to warrantless searches.  Defendants Perez and Renzelman were parole agents employed by CDCR.  Neither of the defendants, however, were assigned to supervise plaintiff.  (Defs.' SUDF 1-4, Perez Decl. at ¶¶ 1-3, Renzelman Decl. at ¶¶ 1-3, Pl.'s Dep., Pl.'s Am. Compl.)

On May 24, 2005, at approximately 5:00 p.m., defendants Vu, Villegas, Sanchez, Hansen, Perez, and Renzelman were in route to execute a warrant on another parolee.  Plaintiff was standing outside of his mother's house talking on the phone.  The defendants stopped their cars when they saw plaintiff, and defendant Vu approached him and asked him if he had anything on him.  Plaintiff stated that he would empty his pockets and began to empty them.  Defendant Vu grabbed plaintiff's wrist and began to search him.  Neither defendants Perez nor Renzelman initially approached plaintiff with defendant Vu.  (Defs.' SUDF 5-10, Perez Decl. at ¶¶ 4-6, Renzelman Decl. at ¶¶ 4-6, Pl.'s Dep., Pl.'s Am. Compl.)

Defendant Perez saw what appeared to be a gun in plaintiff's waistband and yelled "gun!"  Plaintiff had a loaded firearm in the waistband of his pants.  Possession of a firearm violated the terms of plaintiff's parole.  Defendant Perez attempted to assist the arresting officers in handcuffing plaintiff by placing one hand on plaintiff's arm.  Plaintiff was handcuffed and placed face down on the ground.  The firearm was retrieved.  The events from the time defendant Perez yelled "gun!" to the time that plaintiff was secured in handcuffs occurred quickly.  Once plaintiff was handcuffed, the Sacramento Police Department had complete jurisdiction over him. (Defs.' SUDF 11-18, Perez Decl. ¶¶ 6-8, Renzelman Decl. at ¶ 8, Pl.'s Dep., Pl.'s Am. Compl.)

Plaintiff claims that a few minutes after he was handcuffed and laying face down in the street, someone grabbed his ankles, crossed them, and then jumped on him.  Plaintiff does not know who did this.  Plaintiff claims that he was then pulled up from the ground and placed in a police vehicle by unidentified persons.  Plaintiff was transported to the Sacramento County

/////

1   Main Jail, and during booking, was seen by a nurse.  (Defs.' SUDF 19-23, Pl.'s Dep., Pl.'s Am.

2   Compl.)

3          Plaintiff claims that defendants Perez and Renzelman violated his constitutional

4   rights when they attacked him, failed to protect him, and acted with deliberate indifference to his

5   medical needs.  However, plaintiff does not recall either defendants Perez or Renzelman touching

6   him during or after his arrest.  Other than attempting to assist the arresting officers in handcuffing

7   plaintiff by placing one hand on plaintiff's arm, defendant Perez did not have any physical

8   contact with plaintiff.  Defendant Renzelman did not have any physical contact whatsoever with

9   plaintiff.  (Defs.' SUDF 24-28, Perez Decl. at ¶ 7, Renzelman Decl. at ¶ 7, Pl.'s Dep., Pl.'s Am.

10  Compl.)

11         Defendants Perez and Renzelman declare that they did not observe and were not

12  aware of any use of force which they believed to be excessive.  Nor were they aware that plaintiff

13  believed that his mechanical restraints were applied too tight.  Defendants Perez and Renzelman

14  also declare that they were not aware of any injuries to plaintiff that required emergency medical

15  attention nor did they hear plaintiff request emergency medical attention.  They believed that any

16  necessary medical treatment would be available to plaintiff at the Sacramento County Main Jail.

17  (Defs.' SUDF 29-34, Perez Decl. at ¶¶ 9, 11, Renzelman Decl. at ¶¶ 9, 11.)

18          At no time was plaintiff in defendants Perez and Renzelman's custody.  As

19  parole agents, defendants Perez and Renzelman did not have any authority over the police and

20  therefore, they could not intervene in police interactions with plaintiff.  (Defs.' SUDF 35-36,

21  Perez Decl. at ¶¶ 8, 10, Renzelman Decl. at ¶¶ 8, 10.)

22  II.  Defendants' Arguments

23         Defense counsel argues that under the undisputed facts of this case defendants

24  Perez and Renzelman are entitled to summary judgment in their favor because plaintiff cannot

25  establish that any constitutional violation occurred as a result of their participation in the incident

26  in question.  First, with respect to plaintiff's excessive use of force claim, counsel argues that

1   plaintiff was a convicted felon serving his sentence as a parolee and is only entitled to the

2   protections of the Eighth Amendment.  Under the Eighth Amendment standard, counsel

3   contends, defendants Perez and Renzelman are entitled to summary judgment in their favor

4   because defendant Renzelman did not use any force and defendant Perez used only de minimis

5   force against plaintiff.  Specifically, counsel contends that the evidence before the court

6   establishes that defendant Perez merely placed his hand on plaintiff's arm until police officers

7   were able to secure the handcuffs on him.  (Defs.' Mot. for Summ. J. at 1-2, 6-7.)

8          Second, with respect to plaintiff's failure to protect claim,  counsel argues that

9   defendants Perez and Renzelman had no duty to act on plaintiff's behalf because they were not

10  assigned to supervise him and never had custody over him.  Moreover, once plaintiff was placed

11  in handcuffs, the police department had complete jurisdiction over him.  Counsel contends that

12  defendants Perez and Renzelman had no authority over the police and had no authority to

13  intervene in police interactions with plaintiff.  In any event, counsel argues that plaintiff cannot

14  prove that defendants Perez and Renzelman acted with deliberate indifference towards his safety

15  in violation of the Eighth Amendment because these defendants did not observe, and were not

16  aware of, any use of force which they believed to be excessive.  Nor, according to counsel, were

17  they aware that plaintiff believed his mechanical restraints were applied too tight.  In this regard,

18  counsel contends that the evidence before the court establishes that defendants Perez and

19  Renzelman lacked the requisite knowledge necessary to be found liable on this claim.  Finally,

20  counsel notes that even if the defendants Perez and Renzelman were aware of excessive force

21  being used by the defendant police officers, they had no realistic opportunity to intervene on

22  plaintiff's behalf.  Counsel points out that plaintiff himself concedes that the alleged events

23  occurred quickly.  (Defs.' Mot. for Summ. J. at 7-9.)

24          Third, with respect to plaintiff's inadequate medical care claim, counsel argues

25  that defendants Perez and Renzelman had no duty to ensure that plaintiff received medical care

26  because, again, they never had custody over him.  Moreover, once plaintiff was in police custody,

14

the defendants had no authority to require the police to provide him with medical care.  In any event, counsel contends that the evidence indicates that defendants Perez and Renzelman were not aware of any injuries that they believed required emergency medical attention, so they could not have knowingly disregarded any excessive risk to plaintiff's health in violation of the Eighth Amendment.  Finally, defendants Perez and Renzelman believed that any necessary medical treatment would be available to plaintiff at the Sacramento County Main Jail.  Counsel notes that in fact, plaintiff was transported to the jail where he saw a nurse.  Counsel also contends that insofar as plaintiff claims that his medical care was merely delayed because he was taken to the jail instead of to a hospital, he has failed to state a cognizable claim against defendants Perez and Renzelman.  (Defs.' Mot. for Summ. J. at 9-10.)

Next, counsel argues that defendants Perez and Renzelman are entitled to qualified immunity because plaintiff cannot prove that they violated his constitutional rights.  In addition, with respect to plaintiff's excessive use of force claim, counsel contends that a reasonable parole agent would not have believed that the de minimis amount of force used by police officers to restrain plaintiff while his firearm was secured violated plaintiff's constitutional rights.  With respect to plaintiff's failure to protect claim, counsel contends that a reasonable parole agent could have believed that he had no duty to protect a parolee who was not under his supervision and that he, the parole agent, had no authority to intervene during the course of plaintiff's arrest or after plaintiff was in police custody.  According to counsel, no clearly established law requires a parole agent to protect a parolee from violence when the parolee is not assigned to his caseload.  Finally, with respect to plaintiff's inadequate medical care claim, counsel contends that a reasonable parole agent could have believed that he had no duty to obtain medical care for a parolee not under his supervision, no duty to obtain medical care for a parolee in police custody, and no authority to require the police to provide an arrestee with medical care.  According to defense counsel, no clearly established law requires a parole agent to obtain

/////

1   medical care for a parolee who is not assigned to his caseload and who is not in his custody.

2   (Defs.' Mot. for Summ. J. at 10-11.)

3   III.  Plaintiff's Opposition

4          Plaintiff's opposition to the motion for summary judgment brought on behalf of

5   defendants Perez and Renzelman is supported by a declaration signed under penalty of perjury by

6   plaintiff, a statement of undisputed facts, and a response to defendants' statement of undisputed

7   facts.  It is also supported by numerous exhibits, including witness affidavits, police reports, and

8   excerpts from plaintiff's deposition.

9          Plaintiff argues that the defendants are entitled to neither summary judgment in

10  their favor nor to qualified immunity because they have not met the burden of establishing that

11  there are no material facts in dispute in this case.  Specifically, plaintiff argues that defendants

12  Perez and Renzelman violated his constitutional right to be free from the excessive use of force.

13  Plaintiff argues that, contrary to defendant Renzelman's declaration, defendant Renzelman did

14  assist defendant Vu in restraining plaintiff.  Plaintiff notes that in his police report of the

15  incident, defendant Vu expressly states that "Officer Sanchez, Villegas, and Agents Perez and

16  Renzelman immediately ran over and assisted me in subduing Freeland."  In addition, contrary to

17  defendant Perez's declaration that he only briefly held plaintiff's arm, plaintiff notes that in his

18  responses to plaintiff's discovery requests defendant Perez admitted that he held plaintiff's legs

19  to the ground during the course of his arrest.  Plaintiff emphasizes that even after he was subdued

20  and no longer posed any threat to the officers and agents, one or two of the defendants repeatedly

21  assaulted him from behind.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 2-4, 10-12, 19-22, 26-35,

22  Pl.'s Exs. C & E, Pl.'s SUDF 5-11, Pl.'s Decl at ¶¶ 3-6.)

23         Plaintiff also argues that the evidence supports his claim that defendants Perez and

24  Renzelman failed to protect him.  According to plaintiff, all of the defendants were sworn law

25  enforcement officials who had a duty to intervene and stop the assault that took place during the

26  course of his arrest.  Plaintiff contends that the defendants were well aware of the substantial risk

of serious harm to him as a result of the assault but failed to respond reasonably.  Plaintiff notes

that he screamed in pain and begged defendants to stop attacking him and to summon medical

attention.  However, the defendants only laughed at him, threatened him, and gave each other

high fives in between their attacks upon him.  In this regard, plaintiff contends that the evidence

supports his claim that each of the defendants had adequate time to intervene to protect him from

the assault.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 6, 26-27, 35-41, Pl.'s SUDF 11-12, Pl.'s

Decl at ¶¶ 7-8, 11.)

Finally, plaintiff argues that defendants Perez and Renzelman refused to provide

him with adequate medical care.  Plaintiff contends that the evidence before the court indicates

that he was visibly injured and made repeated requests for medical assistance during the course

of his arrest, but the defendants allowed him to go without medical care for thirty to forty

minutes.  According to plaintiff, the defendants ignored his repeated pleas for medical assistance

and instead picked him up and placed him in a patrol car causing him additional injuries.

Plaintiff notes that the evidence before the court establishes that even after he arrived at the

Sacramento County Main Jail, he had to wait to see the intake nurse and did not receive any

actual treatment for his medical needs.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 4-5, 22, 41-

47, Pl.'s SUDF 13-14, 17-18, Pl.'s Decl at ¶¶ 9, 13-14, 17-19.)

## IV.  Defendants' Reply[3]

In reply, defense counsel argues that plaintiff has failed to demonstrate a genuine

issue as to any material fact.  Counsel reiterates that defendant Renzelman did not have any

physical contact with plaintiff during the course of his arrest.  Although defendant Vu stated in

---

[3] Defense counsel has submitted with defendants' reply a final separate statement of undisputed facts, a response to plaintiff's statement of undisputed facts, and objections to plaintiff's evidence.  Insofar as defendants' objections are relevant to the court's disposition of the pending motion, they are overruled.  It would be an abuse of discretion to refuse to consider evidence offered by a pro se plaintiff at the summary judgment stage.  See, e.g., Jones v. Blanas, 393 F.3d 918, 935 (9th Cir. 2004) (reversing and remanding with instructions to consider evidence offered by the pro se plaintiff in his objections to the findings and recommendations).

1   his arrest report that defendants Perez and Renzelman ran over to assist him in subduing plaintiff,

2   plaintiff's speculation as to what defendant Vu meant by this entry in his report is not evidence

3   and cannot create a disputed issue of fact.  In addition, insofar as plaintiff has identified

4   conflicting statements by defendant Perez, including whether defendant Perez held plaintiff's

5   legs during his arrest, those statements are irrelevant or erroneous due to a mistake by previously-

6   assigned defense counsel.[4]   Rather, according to counsel, defendant Perez maintains that his

7   only physical contact with plaintiff was when he briefly held his arm.  (Defs.' Reply at 2-4.)

8           In addition, defense counsel reiterates that plaintiff, as a parolee, is only entitled to

9   the protections of the Eighth Amendment where his excessive use of force claims are concerned.

10   Counsel contends that in this case plaintiff has submitted no evidence to show that defendants

11   Renzelman and Perez used excessive force against him during or after his arrest.  In fact,

12   according to counsel, the evidence demonstrates that defendant Renzelman did not use any force

13   against plaintiff, and defendant Perez only used de minimis force.  (Defs.' Reply at 4-6.)

14           Defense counsel also reiterates that the defendants are not liable under a failure to

15   protect theory.  Specifically, plaintiff has not demonstrated that the defendants had a duty,

16   discretion, or the means to prevent any alleged excessive use of force against plaintiff or that they

17   acted with deliberate indifference by intentionally disregarding an excessive risk to his safety.

18   Counsel repeats the claim that plaintiff was not assigned to the caseloads of defendants

19   Renzelman and Perez and was never in their custody.  Moreover, counsel contends that there is

20   no evidence that the defendants were aware of any alleged excessive force or that they had a

21   realistic opportunity to intervene on plaintiff's behalf.  (Defs.' Reply at 6-7.)

22           Next, counsel reiterates that defendants Renzelman and Perez were not

23   deliberately indifferent to plaintiff's medical needs.  Specifically, counsel argues that plaintiff has

24   not established that he needed emergency medical attention or that defendants Renzelman and

25

26           [4]  As discussed infra, defense counsel has filed a motion to amend defendants' responses
    to plaintiff's second set of requests for admissions.

1   Perez were aware of any injuries that they believed, or should have believed necessitated

2   emergency medical attention.  Here, defendants Renzelman and Perez in fact believed that

3   plaintiff could receive any necessary medical treatment at the Sacramento County Main Jail.

4   Therefore, according to counsel, to the extent that plaintiff claims that he did not receive

5   adequate medical at the jail, he fails to state a cognizable claim against the defendants

6   Renzelman and Perez.  (Defs.' Reply at 7-8.)

7           Finally, counsel reiterates that defendants Renzelman and Perez are entitled to

8   qualified immunity because they did not violate any of plaintiff's clearly established

9   constitutional rights, and reasonably believed that their conduct was lawful.  As to plaintiff's

10  excessive force claims, counsel argues that the evidence reflect that defendant Perez merely put

11  his hand on plaintiff's arm to restrain him while officers secured him and his gun.  Counsel

12  argues that no officer could reasonably anticipate that such prudence would violate the

13  constitution.  As to plaintiff's failure to protect claims, counsel asserts that a reasonable parole

14  agent could have believed that he had no duty to protect a parolee who was not under his

15  supervision and could also reasonably believe that he had no authority to intervene during the

16  course of plaintiff's arrest or thereafter.  Counsel repeats the contention that no clearly

17  established law requires a parole agent to protect a parolee who is not assigned to his caseload

18  and who is not in his custody.  Finally, as to plaintiff's inadequate medical care claims, counsel

19  argues that a reasonable parole agent could have believed that he had no duty to obtain medical

20  care for a parolee not under his supervision, had no duty to obtain medical care for a parolee in

21  police custody, and had no authority to require the police to provide an arrestee with medical

22  care.  In this regard, counsel repeats the claim that no clearly established law requires a parole

23  agent to obtain medical care for an arrestee who is not in his custody.  (Defs.' Reply at 9-10.)

24  /////

25  /////

26  /////

1                                        **ANALYSIS**

2    I. <u>Plaintiff's Excessive Force Claims</u>

3              Before addressing the merits of the pending motion with respect to plaintiff's

4    excessive force claims, the court will first address the applicable legal standard governing such

5    claims.  As noted above, the court concludes that plaintiff's excessive force claims are governed

6    by the Fourth Amendment and not the Eighth Amendment or the Fourteenth Amendment.

7    Although plaintiff was on parole at the time the events alleged took place, the court has

8    determined that he should not be treated as a convicted prisoner for purposes of analyzing his

9    excessive use of force claim.  In this case, the alleged excessive us of force by the defendants

10    took place during the course of plaintiff's arrest on a suspected parole violation for which he had

11    not yet been convicted or sentenced.  <u>See, e.g.</u>, <u>Williams v. County of Riverside</u>, No. ED CV 06-

12    0914 AHM (SH), 2008 WL 4791291, at *7 (C.D. Cal. Oct. 29, 2008) ("plaintiff's excessive force

13    claim arose while he was a 'parolee at large'" and "all claims for excessive force during the

14    course of an arrest must be brought under the Fourth Amendment"); <u>Bishop v. Sank Quentin</u>

15    <u>State Prison Work Place</u>, No. C 01-3411, 2002 WL 1767416, at *3-*4 (N.D. Cal. July 29, 2002)

16    (Fourth Amendment reasonableness standard applies to parolee's claim against parole officer for

17    alleged use of excessive force in effecting arrest for parole violation); <u>see also</u> <u>Turner v. White</u>,

18    443 F. Supp. 2d 288, 294 (E.D.N.Y. 2005) ("Just because an individual has been convicted of a

19    crime in the past and is on parole does not deprive him of his Fourth Amendment constitutional

20    right to be free from excessive force if arrested on another crime.").  Accordingly, under the

21    circumstances presented in this case, the court concludes that the Fourth Amendment standard

22    governs plaintiff's excessive use of force claims.

23              Turning to the merits of plaintiff's claim, as a preliminary matter, the court finds

24    that defendants Perez and Renzelman have borne their initial responsibility of demonstrating that

25    there is no genuine issue of material fact with respect to the level of force they used against

26    plaintiff during the course of his arrest.  Specifically, defendants' evidence demonstrates that

1   other than attempting to assist the arresting officers in handcuffing plaintiff by placing one hand

2   on plaintiff's arm, defendant Perez did not have any physical contact with plaintiff.  In addition,

3   defendants' evidence demonstrates that defendant Renzelman did not have any physical contact

4   whatsoever with plaintiff.  Finally, defendants' evidence demonstrates that plaintiff himself has

5   testified that he does not recall whether defendants Perez or Renzelman touched him during or

6   after his arrest or when he was allegedly attacked from behind.  (Perez Decl. at ¶ 7, Renzelman

7   Decl. at ¶ 7, Pl.'s Dep. at 38, 45, 150-51.)  Given this evidence, the burden shifts to plaintiff to

8   establish the existence of a genuine issue of material fact with respect to his excessive use of

9   force claim against the moving defendants.

10          On defendants' motion for summary judgment, the court is required to believe

11  plaintiff's evidence and draw all reasonable inferences from the facts before the court in

12  plaintiff's favor.  Drawing all reasonable inferences in plaintiff's favor, the court finds that

13  plaintiff has submitted sufficient evidence to create a genuine issue of material fact precluding

14  summary judgment in favor of defendants Perez, and Renzelman on the excessive use of force

15  claim.  According to plaintiff's sworn deposition testimony, after defendants Vu, Villegas,

16  Hansen, Sanchez, Perez, and Renzelman subdued him and secured the firearm, they laid him face

17  down in the street and one or two of them repeatedly attacked him from behind, slamming his

18  feet towards his head and "crunching" his back.  (Pl.'s Decl. at ¶ 6-7, Pl.'s Dep. at 38-40.)

19  Plaintiff also gave sworn testimony that in between attacks upon him, the defendants laughed at

20  plaintiff and gave each other high fives.  (Id.)

21          Although plaintiff, as a parolee in possession of a firearm, appeared to have

22  committed a serious offense, he no longer posed an immediate threat to the safety of officers or

23  others at the time of the attacks because defendants had handcuffed him, laid him face down on

24  the ground, and secured the weapon.  Nor is there any evidence before the court that plaintiff

25  actively resisted arrest or attempted to evade arrest.  There is no evidence, for example, that

26  plaintiff tried to pull his arms away or try to hide his arms or hands while being subdued on the

1   ground.  (Pl.'s Dep. at 38-40, 52.)  See Graham, 490 U.S. at 396 (discussing factors to determine

2   the reasonableness of the use of force under the Fourth Amendment).

3           Plaintiff concedes that he does not know which of the specific defendants attacked

4   him from behind.  However, a reasonable jury could nevertheless infer based on the

5   circumstances of this case that defendants Perez and Renzelman were involved in the alleged

6   attacks.  See Rutherford v. City of Berkeley, 780 F.2d 1444, 1448 (9th Cir. 1986), abrogated on

7   other grounds by, Graham, 490 U.S. 386.  In Rutherford, the plaintiff had brought a civil rights

8   action claiming that five or six police officers detained him and without provocation and without

9   placing him under arrest, threw him on the ground, punched him, kicked him, and handcuffed

10  him.  At trial, the three defendants admitted to handcuffing plaintiff and placing him under arrest

11  for assault with a deadly weapon but denied assaulting him.  Rutherford initially identified the

12  three defendants as the officers who assaulted him but later testified at trial that he was not

13  certain whether any of them actually kicked or punched him.  He further testified, however, that

14  he recalled seeing the defendants while he was on the ground.  At the close of plaintiff's case, the

15  district court directed a verdict in defendants' favor, concluding that no reasonable juror could

16  find for plaintiff because he had offered no proof that any particular defendant had participated in

17  the assault on him.  Disagreeing with that conclusion, the Ninth Circuit reversed and explained:

18          While Rutherford could not specifically state whether defendants
            Officers Houpt, McBride or Hood punched or kicked him, he did
19          testify that they were among the five or six officers who were
            surrounding him while he was being beaten and that he saw each of
20          their faces while he was being beaten.  These three officers agreed
            that they were among the five or six officers who detained, arrested
21          and handcuffed Rutherford, but denied punching or kicking
            Rutherford.  From this evidence, a jury could reasonably infer that
22          the named officers were participants in punching or kicking
            Rutherford.

23

24  Rutherford, 780 F.2d at 1448.  See also Santos, 287 F.3d at 846 (the fact that the plaintiff had no

25  clear recollection of the precise acts the defendants had engaged in to cause his alleged injuries

26  did not preclude plaintiff's excessive force claims as a matter of law); Ting v. United States, 927

1    F.2d 1504, 1508 (9th Cir. 1991) (that plaintiff had no recollection of the shooting that caused his

2    injuries did not entitle the defendant to summary judgment on plaintiff's excessive use of force

3    claims).

4            As noted above, in this case, defendants Perez and Renzelman have

5    acknowledged that they were among the six law enforcement officers who detained plaintiff and

6    assisted in his arrest.  To be sure, the defendants deny attacking plaintiff from behind.  However,

7    according to plaintiff's version of events, defendants Perez and Renzelman were two of the six

8    officers that circled or surrounded him during the alleged attacks involving the excessive use of

9    force.  (Pl.'s Dep. at 47-48.)  In this regard, as in <u>Rutherford</u>, a jury could reasonably infer from

10    the circumstantial evidence presented that defendants Perez and Renzelman were not merely

11    present at the scene, but also participated in the alleged attacks on plaintiff.

12            Finally, the Ninth Circuit has repeatedly cautioned lower courts to take care in

13    deciding cases involving excessive use of force claims at the summary judgment stage.  In this

14    regard, that court has explained:

15          Because [the excessive use of force inquiry] nearly always requires
             a jury to sift through disputed factual contentions, and to draw

16          inferences therefrom, we have held on many occasions that
             summary judgment or judgment as a matter of law in excessive

17          force cases should be granted sparingly.

18    <u>Santos</u>, 287 F.3d at 853.  <u>See</u> <u>also</u> <u>Smith v. City of Hemet</u>, 394 F.3d 689, 701 (9th Cir. 2005);

19    <u>Lolli</u>, 351 F.3d at 415-16.  This case is no different.  Accordingly, the court concludes that

20    defendants Perez and Renzelman are not entitled to summary judgment in their favor with

21    respect to plaintiff's Fourth Amendment excessive force claims.

22    II.   <u>Plaintiff's Failure to Protect or Failure to Intercede Claim</u>

23            Before reaching the merits of plaintiff's failure to protect or failure to intercede

24    claim, the court will again address the proper legal standard applicable to such claims.  As noted

25    above, the court concludes that plaintiff's failure to intercede claims are governed by the Fourth

26    Amendment and not the Eighth Amendment or the Fourteenth Amendment.  Specifically,

plaintiff alleges that the defendants Perez and Renzelman failed to intervene when other officers used excessive force against him during the course of his arrest.  Again, the Ninth Circuit has explained that in such cases, "the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows."  Koon, 34 F.3d at 1447.  Where, as here, law enforcement officers allegedly engaged in the excessive use of force against plaintiff in violation of his rights under the Fourth Amendment, defendants Perez and Renzelman would also be responsible for the violation of plaintiff's rights if they had a "realistic opportunity" to intercede on his behalf and failed to do so.  See Cunningham, 229 F.3d at 1290.

Turning the merits of the pending motion for summary judgment on plaintiff's failure to protect or failure to intercede claims, as a preliminary matter the court finds that defendants Perez and Renzelman have borne their initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the level of protection they provided plaintiff.  For example, defendants' evidence demonstrates that defendants Perez and Renzelman did not observe and were not aware of any use of force which they believed to be excessive.  Nor were they aware that plaintiff believed that the mechanical restraints were applied too tight.  Finally, defendants' evidence suggests that as parole agents, they did not believe they had the authority over police officers to intervene in their interactions with plaintiff.  (Perez Decl. at ¶¶ 9-10, Renzelman Decl. at ¶¶ 9-10.)  Given this evidence, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his failure to protect or failure to intercede claims.

On defendants' motion for summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor.  Drawing all reasonable inferences in plaintiff's favor, the court finds that plaintiff has submitted sufficient evidence to create a genuine issue of material fact precluding summary judgment in favor of defendants.  Specifically, plaintiff has testified under penalty of perjury that the defendants Perez and Renzelman as well as four defendant police officers circled

1    him and, after subduing him and securing his weapon, allowed one or two of the defendants to

2    repeatedly attack him from behind.  (Pl.'s Dep. at 38-39, 47-48, Pl'.s Decl. at ¶¶ 3, 6-7.)  A jury

3    could reasonably infer from the circumstantial evidence presented in this case that the defendants

4    Perez and Renzelman failed to intercede as other officers repeatedly attacked plaintiff.  See

5    Santos, 287 F.3d at 852 ("Nowhere in our cases have we held that police misconduct may be

6    proved only through direct evidence.").

7            While the parties appear to agree that the events in question transpired quickly,

8    according to plaintiff's version of the events minutes passed between the several attacks upon

9    him during which time the defendants laughed at him, threatened him and gave each other high

10   fives.  (Pl.'s Dep. at 38-39, Pl.'s Decl. at ¶¶ 6-8, Am. Compl. at 17.)  Plaintiff's evidence

11   establishes that defendants had a "realistic opportunity" to intervene on his behalf in between the

12   several alleged attacks.  See Cunningham, 229 F.3d at 1289-90.  See also Perkins v. Contra Costa

13   County Sheriff's Dep't J-Team, No. C 07-02013 CW (PR), 2009 WL 688853, at *9 (N.D. Cal.

14   Mar. 16, 2009) (a police officer was not entitled to summary judgment on a failure to intercede

15   claim because the evidence indicated that the timing of events was not so rapid and fluid so as to

16   preclude him from interceding); Fuller v. Cantrell, No. C-03-5616 MMC (PR), 2005 WL

17   1787866, at *4 (N.D. Cal. July 27, 2005) (police officers were not entitled to summary judgment

18   on failure to intercede claims because plaintiff testified under oath at deposition that there were

19   "at least four" officers present during the alleged use of excessive force).

20           Although defendants Perez and Renzelman claim that they had no authority to

21   intervene in the defendant officers' interactions with plaintiff, they have cited no legal authority

22   in support of this proposition.  In cases where parole officers and police officers act in

23   conjunction, the Ninth Circuit has not absolved either parole officers or police officers for failing

24   to intercede while their fellow law enforcement officers engage in depriving a victim of his or her

25   constitutional rights.  See, e.g., Motley, 383 F.3d at 1071.  In Motley, the plaintiff brought a civil

26   rights action against ATF officers, police officers, and a parole officer who claimed to be the

1    parole officer of plaintiff's boyfriend but was not.  The plaintiff alleged that the officers searched

2    her house and used excessive force against her infant son in violation of the Fourth Amendment.

3    The Ninth Circuit held that three of the four officers, including the parole officer, were not

4    entitled to qualified immunity with respect to the plaintiff's Fourth Amendment claims because

5    they participated in harassing and intimidating the plaintiff and her son or failed to intervene to

6    stop such harassment and intimidation.  383 F.3d at 1071.

7           Finally, even assuming defendants Perez and Renzelman had no authority to

8    intercede with the defendant officers' actions as they claim, as noted above, it remains unclear

9    which defendants attacked plaintiff from behind.  If a jury were to find that defendant Perez was

10   involved in attacking plaintiff, for instance, defendant Renzelman as a fellow parole officer

11   surely had authority to intervene to stop the attack.  Likewise, if a jury were to find that defendant

12   Renzelman was involved in an attack upon plaintiff, defendant Perez as a fellow parole officer

13   surely had the authority to intervene.  Accordingly, the court concludes that defendants Perez and

14   Renzelman are not entitled to summary judgment in their favor with respect to plaintiff's Fourth

15   Amendment failure to protect or failure to intercede claim.

16   III.  Plaintiff's Inadequate Medical Care Claims

17          Before reaching the merits of defendants' pending motion for summary judgment

18   on plaintiff's inadequate medical care claims, the court will again address the applicable legal

19   standard governing such a claim.  Again, the court concludes that plaintiff's inadequate medical

20   care claims are governed by the Fourteenth Amendment and not the Eighth Amendment.  In this

21   case, the alleged refusal to provide plaintiff with adequate medical care by defendants Perez and

22   Renzelman occurred during the course of plaintiff's arrest for an alleged parole violation for

23   which he had not yet been convicted or sentenced.  In this respect, plaintiff was a pretrial

24   detainee and not a convicted prisoner at the time of the alleged constitutional violations.  See

25   Conn v. City of Reno, __ F.3d __, 2010 WL 48649, at *11 (9th Cir. Jan. 8, 2010) (the Eighth

26   Amendment protects prison inmates from the denial of medical care while the Fourteenth

1  Amendment protects pretrial detainees); Dean v. City of Fresno, 546 F. Supp. 2d 798, 811 (E.D.

2  Cal. 2008) ("Claims for failure to provide adequate care for serious medical needs, when brought

3  by a detainee who has been neither charged nor convicted of a crime, are analyzed under ths

4  substantive due process clause of the Fourteenth Amendment rather than the Eighth

5  Amendment."). Accordingly, although the court may borrow from the reasoning set forth in

6  decisions applying the Eighth Amendment to analyze plaintiff's claims of inadequate medical

7  care, the Fourteenth Amendment governs plaintiff's claims in this regard.

8        Turning to the merits of the pending motion, as a preliminary matter, the court

9  finds that defendants Perez and Renzelman have borne their initial responsibility of

10  demonstrating that there is no genuine issue of material fact with respect to the adequacy of

11  medical care they provided to plaintiff during the course of his arrest. For example, defendants'

12  evidence demonstrates that defendants Perez and Renzelman were not aware that plaintiff had

13  any injuries that required emergency medical attention nor did they hear plaintiff request

14  emergency medical attention. Defendants' evidence also demonstrates that defendants Perez and

15  Renzelman believed that medical treatment, if necessary, would be available to plaintiff at the

16  Sacramento County Main Jail. (Perez Decl. at ¶¶ 9, 11 & Renzelman Decl. at ¶¶ 9, 11.) Given

17  this evidence, the burden shifts to plaintiff to establish the existence of a genuine issue of

18  material fact with respect to both the objective and subjective components of his deliberate

19  indifference claims.

20        On defendants' motion for summary judgment, the court is required to believe

21  plaintiff's evidence and draw all reasonable inferences from the facts before the court in

22  plaintiff's favor. Drawing all reasonable inferences in plaintiff's favor, the court finds that

23  plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with

24  regard to his claim that defendants Perez and Renzelman denied him adequate medical care.

25  Plaintiff's evidence indicates that he had an objective, serious need for medical treatment. See

26  McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment; the presence of a medical condition

that significantly affects an individual's daily activities; or the existence of chronic and

substantial pain are examples of indications that a prisoner has a 'serious' need for medical

treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth

Amendment duty to provide medical care applies "to medical conditions that may result in pain

and suffering which serve no legitimate penological purpose."). During the course of his arrest,

plaintiff sustained injuries to his back, hip, wrists, neck, and ankle and lacerations and road rash

to his face. (Pl.'s Dep. at 75-76, 88, 107-08.) According to plaintiff, he still suffers from chronic

pain as a result of these injuries. (Id. at 40.) Given plaintiff's evidence with respect to injuries

suffered, a refusal to provide medical treatment could have resulted in "further significant injury"

or the "unnecessary and wanton infliction of pain." See, e.g., McGuckin, 974 F.2d at 1059-60.

However, even if plaintiff had an objective, serious need for medical treatment,

plaintiff's evidence does not demonstrate that defendants Perez and Renzelman responded to

plaintiff's serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834;

Estelle, 429 U.S. at 106. At most, the defendants delayed plaintiff's medical care by thirty to

forty minutes. Plaintiff has not submitted any evidence to the court indicating that this brief

delay in receiving medical treatment exacerbated his alleged injuries or caused him further

significant harm. See Berry, 39 F.3d at 1057; McGuckin, 974 F.2d at 1059; Wood, 900 F.2d at

1335; Hunt, 865 F.2d at 200; Shapley, 766 F.2d at 407. Cf. Fleming v. Lefevere, 423 F. Supp. 2d

1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does

not create a triable issue of fact because he has not shown that he has any medical training or

expertise upon which to base such an opinion."). Nor has plaintiff submitted any evidence in

opposition to the motion for summary judgment demonstrating that defendants' decision created

a substantial risk of serious harm to plaintiff's health or that it was medically unacceptable under

the circumstances. In fact, according to plaintiff's own testimony, he was seen by medical

personnel at the jail that evening during the booking process and again the following day during

1   sick call.  (Pl.'s Dep. at 106-09.)  Plaintiff has submitted no evidence to indicate that he needed

2   emergency medical attention or medical care sooner than he received it.  Accordingly, the court

3   concludes that defendants Perez and Renzelman are entitled to summary judgment in their favor

4   with respect to plaintiff's Fourteenth Amendment inadequate medical care claim.

5   IV.  Qualified Immunity[5]

6              As noted above, plaintiff has submitted evidence which taken in the light most

7   favorable to him are sufficient, if proven, to demonstrate that defendants engaged in an excessive

8   use of force in violation of the Fourth Amendment.  Similarly, if taken in the light most favorable

9   to plaintiff the evidence presented, if proven at trial, is sufficient to demonstrate that defendants

10  failed intercede on plaintiff's behalf in violation of the Fourth Amendment.

11             The state of the law at the time of the alleged events in 2005 clearly would have

12  given defendants fair warning that such conduct was unconstitutional.  In this regard, the United

13  States Supreme Court has recognized:

> [G]eneral statements of the law are not inherently incapable of
> giving fair and clear warning, and in other instances a general
> constitutional rule already identified in the decisional law may
> apply with obvious clarity to the specific conduct in question, even
> though "the very action in question has [not] previously been held
> unlawful."

18  United States v. Lanier, 520 U.S. 259, 271 (1997) (quoting Anderson v. Creighton, 483 U.S. 635,

19  640 (1987)).

20             In 2005, it was clearly established that an officer's use of excessive force during

21  the course of an arrest was a violation of the Fourth Amendment.  See, e.g., Graham, 490 U.S. at

22  395; Liston, 120 F.3d at 976.  In this regard, defendants Perez and Renzelman had fair warning at

23

---

24          [5]  The court has previously determined that the defendants are entitled to summary
    judgment with respect to plaintiff's inadequate medical care claims.  Accordingly, the
25  undersigned will only address the qualified immunity arguments advanced on behalf of
    defendants Perez and Renzelman with respect to plaintiff's excessive use of force and failure to
26  protect or failure to intercede claims.

1   the time of plaintiff's arrest that they could not repeatedly attack him from behind after officers

2   had subdued plaintiff and secured his weapon.  Likewise, in 2005, it was clearly established that

3   if given a realistic opportunity to do so, an officer's failure to intercede to prevent the use of

4   excessive force by other officers was a violation of the Fourth Amendment.  See Motley, 383

5   F.3d at 1071; Koon, 34 F.3d at 1447 n.25; see also Perkins v. Contra Costa County Sheriff's

6   Dep't J-Team, No. C 07-02013 CW (PR), 2009 WL 688853, at *9 (N.D. Cal. Mar. 16, 2009) (a

7   police officer was not entitled to qualified immunity on a failure to intercede claim because case

8   law in 2005 clearly prohibited failing to intercede to prevent the use of excessive force).

9   Therefore, defendants Perez and Renzelman were on notice at the time of plaintiff's arrest that

10  they could not simply stand by as other officers engaged in the excessive use of force against

11  plaintiff.

12          Accordingly, the court concludes that defendants Perez and Renzelman are not

13  entitled to summary judgment in their favor with respect to their affirmative defense of qualified

14  immunity.

15                                    **OTHER MATTERS**

16          Also pending before the court is defendants' motion for leave to amend responses

17  to plaintiff's second set of requests for admission.  In that motion, defense counsel contends that

18  some of the defendants' responses are factually inaccurate and based on inadvertent errors by the

19  defense counsel who was previously assigned to this action.  Specifically, defendants' initial

20  response to plaintiff's Request for Admission No. 1 indicated that defendants Perez and

21  Renzelman denied assisting in plaintiff's arrest when, in fact, defendant Perez had placed a hand

22  on plaintiff's arm to assist the arresting officers in handcuffing plaintiff.  In addition, defendants'

23  initial responses to plaintiff's Requests for Admission Nos. 8, 18, 22, and 49 indicated that

24  defendants Perez and Renzelman did not write reports regarding plaintiff's arrest when, in fact, a

25  supplemental report regarding plaintiff's arrest was submitted on behalf of defendant Perez.

26  Finally, defendants' initial response to plaintiff's Request for Admission No. 31 indicated that

1  defendant Perez admitted to holding plaintiff's legs to the ground during his arrest when, in fact,

2  defendant Perez placed one hand on plaintiff's arm to assist the arresting officers in handcuffing

3  him and defendant Perez had no other physical contact with plaintiff.

4          Defense counsel notes that defendants Perez and Renzelman first learned of the

5  erroneous admissions made in discovery responses on their behalf on November 4, 2009, when

6  they reviewed plaintiff's opposition to the pending motion for summary judgment.  Counsel

7  immediately filed the instant motion to amend upon learning of the errors.  Plaintiff has not

8  opposed or otherwise responded to defendants' motion.

9          Rule 36 of the Federal Rules of Civil Procedure provides:

10          A matter admitted under this rule is conclusively established unless
            the court, on motion, permits the admission to be withdrawn or
11          amended.  Subject to Rule 16(e), the court may permit withdrawal
            or amendment if it would promote the presentation of the merits of
12          the action and if the court is not persuaded that it would prejudice
            the requesting party in maintaining or defending the action on the
13          merits . . . .

14          In this case, defendants' proposed amended responses to plaintiff's requests for

15  admission are consistent with their other responses to plaintiff's previous discovery requests and

16  their duly executed declarations accompanying their motion for summary judgment.  (Pl.'s Opp'n

17  to Defs.' Mot. for Summ. J. Ex. F (Perez Response to Interrogatory No. 6), Perez Decl. &

18  Renzelman Decl.)  The court finds that allowing defendants to withdraw and revise their initial

19  responses to plaintiff's requests for admission will aid in presenting the merits of this case.

20  See Conlon v. United States, 474 F.3d 616, 622 (9th Cir. 2007) (Rule 36(b) seeks to serve two

21  goals: truth-seeking in litigation and efficiency in dispensing justice).  In addition, by not

22  opposing or otherwise responding to defendants' motion, plaintiff has failed to show that he will

23  be substantially prejudiced if the court allows defendants leave to amend their responses.

24  See Conlon, 474 F.3d at 622 ("The party relying on the deemed admission has the burden of

25  proving prejudice.");  Sonoda v. Cabrera, 255 F.3d 1035, 1039 (9th Cir. 2001) ("The prejudice

26  contemplated by Rule 36(b) is not simply that the party who obtained the admission will now

have to convince the factfinder of the truth . . . .").  As discussed above, given the evidence

presented in connection with the summary judgment motion a reasonable juror could conclude

that the defendants violated plaintiff's rights under the Fourth Amendment regardless of their

responses to these requests for admission by  plaintiff.  Finally, defendants amendments are being

made well before trial, and thus plaintiff will not be prejudiced or hindered in presenting

evidence to the factfinder.  See Hadley v. United States, 45 F.3d 1345, 1348 (9th Cir. 1995)

("Courts are more likely to find prejudice when the motion for withdrawal is made in the middle

of trial.").  Accordingly, the court will grant defendants' motion for leave to amend responses to

plaintiff's second set of requests for admission.

**CONCLUSION**

IT IS HEREBY ORDERED that defendants' November 9, 2009 motion for leave

to amend responses to plaintiff's second set of requests for admission (Doc. No. 180) is granted.

IT IS HEREBY RECOMMENDED that defendants' July 17, 2009 motion for

summary judgment (Doc. No. 135) be granted in part and denied in part as follows:

1.  Defendants' motion for summary judgment with respect to plaintiff's Fourth

Amendment excessive use of force claims be denied;

2.  Defendants' motion for summary judgment with respect to plaintiff's Fourth

Amendment failure to protect or failure to intercede claims be denied;

3.  Defendants' motion for summary judgment with respect to plaintiff's

Fourteenth Amendment inadequate medical care claims be granted; and

4.  Defendants' motion for summary judgment with respect to their affirmative

defense of qualified immunity from plaintiff's Fourth Amendment excessive use of force claims

and Fourth Amendment failure to protect or failure to intercede claims be denied.

These findings and recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

one days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3  shall be served and filed within seven days after service of the objections.  The parties are

4  advised that failure to file objections within the specified time may waive the right to appeal the

5  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6  DATED: January 28, 2010.

7

8  _____

9  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

10  DAD:9
    free0187.57state

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26